**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **RUBY A. HILL,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 10 C 5780 |
| | ) | |
| **ST. JAMES HOSPITAL AND** | ) | Judge John Z. Lee |
| **HEALTH CENTERS,** | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Ruby Hill has sued St. James Hospital and Health Centers ("St. James Hospital") for race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 ("§ 1981"), as well as breach of contract, intentional infliction of emotional distress, and retaliatory discharge under Illinois common law. Before the Court is defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the following reasons, the Court grants the motion.

**Local Rule 56.1**

In this district, motions for summary judgment are governed by Local Rule 56.1. "The obligation set forth in Local Rule 56.1 'is not a mere formality.' Rather, '[i]t follows from the obligation imposed by Fed. R. Civ. P. 56(e) on the party opposing summary judgment to identify specific facts that establish a genuine issue for trial.'" *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 924 (7th Cir. 1994)). The Seventh Circuit has "routinely held that a district court may strictly enforce compliance with its local

rules regarding summary judgment motions." *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 537 (7th Cir. 2011) (quotation omitted).

Local Rule 56.1(b)(3)(B) requires the nonmovant to file a "concise response to the movant's statement that shall contain . . . a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b)(3)(B). In addition, Local Rule 56.1(b)(3)(C) "requires specifically that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate 'statement . . . of any additional facts that require the denial of summary judgment.'" *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809 (7th Cir. 2005) (quoting LR56.1).

The failure of a nonmoving party to abide by the rule's requirements has significant consequences. "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Rule 56.1(b)(3); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission."). "This rule may be the most important litigation rule outside statutes of limitation because the consequences of failing to satisfy its requirements are so dire." *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000).

Plaintiff, who is represented by counsel, failed to file a Local Rule 56.1(b)(3)(B) statement of facts that responds to each statement of fact in defendant's Local Rule

2

56.1(a)(3) submission.[1] Thus, the Court deems admitted each and every one of defendant's statements of fact to the extent that each statement offers admissible evidence and is supported by the movant's citation to the record.[2] (*See* Def.'s LR 56.1 Stmt. ¶¶ 1-73.)

In addition, although Hill offers additional facts in her memorandum of law, LR 56.1(b)(3)(C) "provides the only acceptable means of . . . presenting additional facts." *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995). "Simply providing additional facts in one's responsive memorandum is insufficient to put those facts before the Court." *Malec*, 191 F.R.D. at 584. By failing to submit a statement under Local Rule 56.1(b)(3)(C), plaintiff has also failed to put forth any additional facts before the Court that would bear on defendant's summary judgment motion.

**Facts**

With the exception of a brief period of time during which she was employed elsewhere, Hill, an African-American female, worked as a nurse for St. James Hospital in Olympia Fields, Illinois, on either a part-time or full-time basis, from September 1993 until January 2010. (Def.'s LR 56.1(a)(3) ¶¶ 5, 8-11, 16, 23, 27, 34, 50; Def.'s Answer & Affirm. Defenses ¶ 12.) Hill had no contract of employment with St. James Hospital. (Def.'s LR 56.1(a)(3) ¶ 71.) From approximately 2004 to September 2005, Hill was the Charge Nurse in the catheterization laboratory ("Cath Lab"), where cardiac diagnostic and therapeutic procedures are performed. (Def.'s Ex. A, Hill Dep. at 42, 45, 50.) From October 2005 until January 2010, Hill was Chief Cardiac Nurse in the Cath Lab. (Def.'s

[1] Although plaintiff's counsel still seeks to depose several witnesses, discovery in this case closed on August 19, 2011 pursuant to Judge Charles R. Norgle, Sr.'s 6/22/11 Minute Order.

[2] Defendant's fact statement in paragraph 74 is not supported by the citation to paragraph 5 of the Irons Affidavit and thus is not deemed admitted.

LR 56.1(a)(3) ¶ 27.) During her tenure at St. James Hospital, Hill never registered any complaints of discrimination based on her race, color, or gender. (*Id.* ¶¶ 46, 68.)

In 2009, the Cath Lab at Olympia Fields, where Hill was employed, was forced to absorb the staff of a different Cath Lab located in Chicago Heights, which was closed by St. James Hospital for financial reasons. (*Id.* ¶ 31.) That staff included Rita McCune, an African-American who had twenty more years of tenure at St. James Hospital than Hill and held the position of Chief Cardiac Nurse at the Chicago Heights Cath Lab. (*Id.* ¶¶ 29-31.) After the two Cath Labs merged, the manager of the now-combined Cath Lab, Cathy Cox, a white female, allowed Hill to remain as Chief Cardiac Nurse and changed McCune's title to Assistant Chief Cardiac Nurse. (*Id.* ¶ 34.)

In 2009, Midwestern Physician Group, the group of doctors that performed all of the procedures at the Cath Lab, did not renew its contract with St. James Hospital. (*Id.* ¶ 51.) As a result, the number of Cath Lab procedures performed at St. James Hospital dropped by 699. (*Id.* ¶ 52.) At the same time, the cost to St. James Hospital of performing a Cath Lab procedure increased by approximately $105.00 per procedure. (*Id.* ¶ 53.) This combination of circumstances necessitated the elimination of Hill's Chief Cardiac Nurse position, McCune's Assistant Chief Cardiac Nurse position, as well as other positions in the Cath Lab. (*Id.* ¶¶ 54-55.) Thereafter, the Cath Lab's nursing staff consisted of a registered nurse, McCune, and two rotating daily charge nurses, Alexander Cobbin, a white male, and Anne-Chelle Brown, an African American female. (*Id.* ¶ 56.)

As to Hill in particular, on January 15, 2010, Cox told Hill that her position had been eliminated because of the decline in the number of cases performed in the Cath Lab

and the increased cost of the procedures. (*Id.* ¶ 50.)[3] Hill was also told that although there were no available positions in the Cath Lab, there were other open positions for which she was qualified at St. James Hospital. (*Id.* ¶ 58.) She was encouraged to speak with Janet Slaven-Allen, the Vice President of Human Resources, who was waiting to meet with her so that she could secure other employment within the organization. (*Id.* ¶ 59.) Defendants state that the elimination of Hill's position was not motivated by race, color, gender, or retaliation. (*Id.* ¶¶ 65-68.)

On the same day that she received this news, Hill fell in the parking lot of St. James Hospital while going home and was diagnosed with contusions and placed on bed rest. (*Id.* ¶ 61.) Although Hill eventually met with Slaven-Allen, who told Hill that there were positions for Hill in St. James Hospital's Intensive Care Unit and Emergency Room, Hill told Slaven-Allen that she was not interested in those positions. (*Id.*) Because Hill was not seeking alternative employment within the organization, St. James Hospital offered her a severance package, but Hill declined the offer because she wanted to collect unemployment benefits. (*Id.* ¶ 63.)

## Discussion

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing

---

[3] Hill attempts to refute this fact by citing in her response brief to ¶ 37 of her affidavit, which states that Midwest Physician Group maintained some of its Cath Lab practice at St. James. But her affidavit does nothing to refute that the number of procedures being performed in the Cath Lab had declined by 699 while the cost of the procedures increased. (*Compare* Def.'s LR 56.1(a)(3) Stmt. ¶¶ 50-55, *with* Pl.'s Ex. B, Hill Aff. ¶ 37.)

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

I. **Breach of Contract and Intentional Infliction of Emotional Distress**

In her response brief to St. James Hospital's motion for summary judgment, Hill states that she "moves to voluntarily dismiss Count III, Breach of Contract, and Count V, Intentional Infliction of Emotional Distress." (Pl.'s Resp. Opp'n Def.'s Mot. Summ. J. 1.) Because the parties are in agreement that Hill's breach of contract and intentionally infliction of emotional distress claims should be dismissed, the Court grants defendant's summary judgment motion as to Counts III and V.

II. **Race Discrimination Under Title VII (Count I) and § 1981 (Count II)**

Title VII prohibits employers from discriminating against an employee "because of race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981 "affords a federal remedy against discrimination in private employment on the basis of race." *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975). "Because we evaluate § 1981 claims under the same rubric as Title VII claims, we need not address them separately." *Matthews v. Donahoe*, No. 12-1065, 2012 WL 4378272, at *3 (7th Cir. Sept. 26, 2012).

"[A] plaintiff may prove discrimination either directly or indirectly." *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). "To avoid summary judgment under the direct approach, the plaintiff must produce sufficient evidence, either direct or

6

circumstantial, to create a triable question of intentional discrimination in the employer's decision." *Silverman v. Bd. of Educ. of the City of Chi.*, 637 F.3d 729, 733 (7th Cir. 2011). Circumstantial evidence under the direct approach must "lead . . . *directly* to the conclusion that an employer was illegally motivated, without reliance on speculation." *Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 676 (7th Cir. 2012). "A plaintiff also may proceed under the indirect, burden-shifting method adapted from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973)." *Id.*

Under the direct approach, Hill has failed to present any direct or circumstantial evidence to create a triable issue as to whether St. James Hospital intentionally discriminated against her based on race when it eliminated her position. The record contains no evidence that leads directly to the conclusion, without reliance on speculation, that St. James Hospital's elimination of her position was motivated by racial animus. Thus, if Hill is to succeed in staving off summary judgment, she must proceed under the indirect method.

Under the indirect method described in *McDonnell Douglas*, plaintiff typically must first establish a prima facie case by demonstrating that "[s]he belongs to a protected class, was meeting the employer's legitimate expectations, suffered an adverse action, and was treated worse than similarly situated employees outside the protected class." *Lewis v. Caterpillar Inc.*, 367 Fed. Appx. 683, 685 (7th Cir. 2010). Although plaintiff states that the typical prima facie elements apply, it is also arguable that the mini-reduction-in-force ("mini-RIF") test for establishing a prima facie case may also apply. *See Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 693-94 (7th Cir. 2000).

7

In a mini-RIF, as explained in *Michas*, "a single employee is discharged and his position is not filled. However, the employee's responsibilities are assumed by other members of the corporate workforce." *Id.* at 693. Because the "employee's duties are absorbed by other workers and the employee was replaced, not eliminated, we [dispense with the traditional fourth prong of the prima facie case and instead] . . . require that a plaintiff demonstrate that his duties were absorbed by employees who were not members of the protected class." *Id.* (quotations omitted).

Here, the mini-RIF test may apply because, Hill's position was eliminated, and it may be inferred that the other remaining positions absorbed the duties of her position. *See Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 725 (7th Cir. 2008) ("[W]here the plaintiff's duties were reabsorbed by [other employees] after [the plaintiff's] termination . . . we must apply the indirect burden shifting method for a mini-reduction-in-force situation.") (quotation omitted). Thus, the Court analyzes the facts using both the fourth prong of the typical prima facie case, *i.e.*, that plaintiff was treated worse than similarly situated employees outside the protected class, as well as the fourth prong of the mini-RIF prima facie case, *i.e.*, that plaintiff's job duties were absorbed by employees who were not members of her protected class, *see Michas*, 209 F.3d at 693.

If Hill successfully establishes a prima facie case under either of those standards, we move to the second step of the indirect method and "the defendant must provide a legitimate nondiscriminatory reason for the action." *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 609 (7th Cir. 2012). For the third step, "[t]he plaintiff then must show that there is an issue of fact whether this reason is pretextual." *Id.* "Pretext may be established directly with evidence that [the employer] was more likely than not motivated

by a discriminatory reason, or indirectly by evidence that the employer's explanation is not credible." *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1039 (7th Cir. 1993) (citations omitted). "Indirect evidence of pretext showing that an employer's proffered reasons are not credible may be made by demonstrating that the reasons are factually baseless, were not the actual motivation for the discharge, or were insufficient to motivate the discharge." *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 983 (7th Cir. 1999).

Here, plaintiff has failed to establish a prima facie case under the *McDonnell Douglas* test. Although, it is undisputed that Hill is a member of a protected class, was performing her job satisfactorily, and was terminated (Def.'s LR 56.1 Stmt. ¶¶ 54-55; Def.'s Answer & Affirm. Defenses ¶ 12.), thereby satisfying the first three elements of both the typical prima facie and the mini-RIF prima facie standard, plaintiff has failed to show a triable fact as to the fourth element under either standard.

It is undisputed that after the elimination of Hill's Chief Cardiac Nurse position, the only nurses that remained in the Cath Lab were McCune, an African-American female, who filled the only registered nurse position, as well as Alexander Cobbin, a Caucasian male, and Anne Chelle-Brown, an African-American female, who rotated as daily charge nurses. (Def.'s LR 56.1 Stmt. ¶ 56.) [4] Thus, the only remaining Cath Lab staff not in Hill's protected class was Alexander Cobbin, a daily charge nurse. It is undisputed, however, that the daily charge nurse position was different from the registered nurse position that Hill had. (Def.'s LR 56.1 Stmt. ¶ 56.) In addition, Cobbin

---

[4] As discussed above, because Hill has not complied with Local Rule 56.1 and failed to file either a response to St. James Hospital's statement of facts or a statement of additional facts, the Court deems defendant's statement of facts admitted. Plaintiff does include pages and pages of additional factual assertions within her response brief, but such tactics violate not only letter but the spirit of Local Rule 56.1 and will not be considered. (*See, e.g.*, Pl.'s Resp. Opp'n Def.'s Mot. Summ. J. 11-17, 21-23.)

shared the position with Chelle-Brown, whereas Hill was the only person to hold the Chief Cardiac Nurse position at the Olympia Fields Cath Lab. (*Id.*) As such, Cobbin could not have absorbed all of Hill's duties. (*Id.*) Based on all of these undisputed facts, the Court holds that no reasonable jury could find that the Cobbin was similarly situated to Hill or that Cobbin, as rotating charge nurse, absorbed most of the duties of the Chief Cardiac Nurse position.

In addition, even if Hill were able to establish the fourth element of a prima facie case, defendant would nevertheless be entitled to summary judgment. It undisputed that the elimination of Hill's position was due to financial pressure; 699 fewer procedures were being performed in St. James Hospital's Cath Lab and the cost per procedure had increased to $105.00. (Def.'s LR 56.1 Stmt. ¶¶ 52-54.)

In her response brief, Hill tries to refute the claim of economic necessity by averring that Midwestern Physician Group still used St. James Hospital's Cath Lab to perform *some* of its procedures. (Pl.'s Ex. B, Hill Aff. ¶ 37.) But, even if the Court were to excuse Hill's noncompliance with LR 56.1 (which it does not) and even if she had properly laid a foundation to establish personal knowledge of this assertion (which she has not), the fact that Midwestern Physician Group still used St. James Hospital's Cath Lab for *some* of its procedures simply does not refute the fact that the Cath Lab faced an overall decrease of 699 procedures and an increase in $105.00 per procedure, factors that created the economic necessity in the first place.

Hill also attempts to create a triable issue as to pretext by trying to refute defendant's fact statement that "Hill did not make a complaint of racial discrimination about Ms. Cox to Ms. Brassea." (*See* Def.'s LR 56.1 Stmt. ¶ 46.) Plaintiff, however,

offered no testimony at her deposition that she had complained about race discrimination to Brassea, the Chief Nursing Officer, or anyone else at St. James Hospital. (*See* Pl.'s Ex. A, Hill Dep. at 97.) As discussed above, Hill failed to comply with Local Rule 56.1(b)(3)(B) and (C).[5] Accordingly, each properly supported fact statement in defendant's LR 56.1(a)(3) statement of facts is deemed admitted, and the Court does not consider any additional facts raised in, or exhibits attached to, Hill's responsive memorandum because such facts are not properly before the Court. As a result, Hill has not raised a triable issue of fact as to this issue.[6]

For her part, Hill does state that she began to feel that there was a difference in how she was being treated because of her race, but such an observation alone without more does not create a triable issue as to whether defendant's stated reason for eliminating Hill's position was a sham or whether defendant's actions were motivated by racial animus. If it did, every plaintiff who claims to have a subjective feeling of being discriminated against could escape summary judgment, even if those feelings were entirely unsubstantiated by facts. This is not the case. *See Abuelyaman v. Ill. State Univ.*, 667 F.3d 800, 812 (7th Cir. 2011) ("wholly conclusory beliefs" that discrimination occurred do not create a triable issue of fact); *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 541 (7th Cir. 2011) ("unsubstantiated belief" of mistreatment based on race is insufficient to preclude summary judgment).

In sum, Hill has failed to make out a prima facie case of race discrimination under either the typical prima facie standard or the mini-RIF standard. Moreover, even assuming that she were able to meet this initial burden, defendant has asserted a

---

[5] *See supra*, discussion at 2-3.

[6] Furthermore, Hill made no attempt to deny defendant's fact statement in paragraph 68 that Hill "never complained about discrimination during her employment". (*See* Pl.'s Resp. Br. 2-4.)

11

nondiscriminatory basis for its actions, and Hill has failed to create a triable issue that those reasons are a pretext. Accordingly, the Court grants defendant's summary judgment motion as to Hill's Title VII and § 1981 race discrimination claims (Counts I and II).

### III. Retaliatory Discharge Under Illinois Law (Count IV)

Next, defendant moves for summary judgment as to Hill's retaliatory discharge claim, which alleges that she was terminated for complaining about race discrimination (*see* Am. Verified Compl. ¶ 89). For the following reasons, this claim too cannot survive summary judgment.

"The general rule in Illinois is that an at-will employee may be discharged by the employer at any time and for any reason." *Grabs v. Safeway, Inc.*, 917 N.E.2d 122, 126 (Ill. App. Ct. 2009). "Illinois law carves out narrow exceptions to this rule," including a claim for retaliatory discharge. *Sherer v. Casey's Gen. Stores, Inc.*, No. 11–cv–0082–MJR–PMF, 2011 WL 1326956, at *3 (S.D. Ill. Apr. 1, 2011).

To prove a retaliatory discharge claim under Illinois law, an at-will employee must establish that she was "(1) discharged; (2) in retaliation for her activities; and (3) that the discharge violates a clear mandate of public policy." *Blount v. Stroud*, 904 N.E.2d 1, 9 (Ill. 2009) (citations omitted). "Although what counts as a clearly mandated public policy is not precisely defined, the tort has been narrowly construed in Illinois to include only discharges in retaliation for certain activities, such as reporting an employer's criminal violations, or violations of health and safety standards." *Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 628-29 (7th Cir. 2009) (citations omitted).

Indeed, the Illinois Supreme Court "has consistently sought to restrict the common law tort of retaliatory discharge." *Id.* at 629.

Significantly, "Illinois courts have not extended this tort to situations where a plaintiff alleges that the public policy violated is the policy contained in the Illinois Human Rights Act." *Blount*, 904 N.E.2d at 9. This is because Illinois courts only "acknowledge[] the need to recognize the tort of retaliatory discharge when there is no other remedy available to vindicate the public policy involved." *Stoecklein v. Ill. Tool Works, Inc.*, 589 F. Supp. 139, 145 (N.D. Ill. 1984).

It is undisputed that Hill was an at-will employee. (Def.'s LR 56.1(a)(3) Stmt. ¶ 71.) Further, the Illinois Human Rights Act specifically prohibits termination of an employee in retaliation for his or her opposition to unlawful employment practices, including race discrimination. 775 Ill. Comp. Stat. 5/6–101. Because the only public policy upon which Hill relies to substantiate her tort claim for retaliatory discharge is one that is expressly embodied in the Illinois Human Rights Act, her common law retaliatory discharge claim necessarily fails as a matter of law. *See Mein v. Masonite Corp.*, 485 N.E.2d 312, 315 (Ill. 1985) (refusing to recognize a cause of action for retaliatory discharge where discrimination claim was cognizable under Illinois Human Rights Act). Therefore, the Court grants defendant's motion for summary judgment as to Count IV.

IV.     Breach of Contract

## Conclusion

For the reasons provided herein, the Court grants St. James Hospital and Health Centers' summary judgment motion in its entirety [doc. no. 28]. This case is hereby terminated.

**SO ORDERED**                                             **ENTER:   2/15/13**

_____
**JOHN Z. LEE**
**U.S. District Judge**

14